

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

June 3, 2004

The Honorable Sonya Letson
Potter County Attorney
500 South Fillmore, Room 303
Amarillo, Texas 79101

Opinion No. GA-0198

Re: Whether a hospital district or the private entity that provides indigent care on the district's behalf may require an uninsured applicant for indigent health care, as a prerequisite to receiving the care, to obtain health insurance through the applicant's employer (RQ-0146-GA)

Dear Ms. Letson:

On behalf of the Amarillo Hospital District (the "District"), you ask whether a hospital district or the private entity that provides indigent care on the district's behalf may require an uninsured applicant for indigent health care, as a prerequisite to receiving the care, to obtain health insurance through the applicant's employer.[1]

The legislature established the District in 1959 under article IX, section 5(a) of the Texas Constitution, which authorizes the creation of a hospital district "coextensive with and hav[ing] the same boundaries as the . . . City of Amarillo." TEX. CONST. art. IX, § 5(a); see Act of Mar. 11, 1959, 56th Leg., R.S., ch. 32, § A, sec. 1, 1959 Tex. Gen. Laws 59, 59-60. Article IX, section 5(a) requires any district so created to assume responsibility for providing "medical or hospital care for needy individuals." TEX. CONST. art. IX, § 5(a). And, in accordance with its constitutional authority, the legislature created the District to own and operate or to provide for "a hospital or hospital system for indigent and needy persons" residing in the District. See Act of Mar. 11, 1959, 56th Leg., R.S., ch. 32, § A, sec. 1, 1959 Tex. Gen. Laws 59, 59-60, amended by Act of May 28, 1993, 73d Leg., R.S., ch. 769, § 1, sec. 1, 1993 Tex. Gen. Laws 3008, 3008-09; see also Act of Mar. 11, 1959, 56th Leg., R.S., ch. 32, § A, sec. 13, 1959 Tex. Gen. Laws 59, 65 (requiring the District to assume "full responsibility for . . . furnishing . . . medical and hospital care for . . . needy and indigent" residents). The District's Board of Managers annually must adopt requirements for determining whether "a person is eligible for hospital, medical, or health care assistance from the District." Act of May 28, 1993, 73d Leg., R.S., ch. 769, § 8, sec. 13A, 1993 Tex. Gen. Laws 3008, 3011. When a patient from Potter County or the District is admitted to a District facility, the District must inquire into the ability of the patient or any relative legally liable for the patient's support to pay for medical care in whole or in part. See id. § 9, sec. 14(a), 1993 Tex. Gen. Laws 3008, 3011-12.

---

[1] See Letter from Honorable Sonya Letson, Potter County Attorney, to Honorable Greg Abbott, Texas Attorney General (Dec. 5, 2003) (on file with Opinion Committee, also available at http://www.oag.state.tx.us) [hereinafter Request Letter].

As a hospital district, the District is also subject to chapter 61 of the Health and Safety Code, the Indigent Health Care and Treatment Act (the "Act"), to the extent the Act does not conflict with the District's specific enabling statute. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 61.001, .002(7), .051(a) (Vernon 2001). Among other things, the Act provides for medical care for an eligible person who resides in a hospital district's service area:

A . . . hospital district shall provide health care assistance to each eligible resident in its service area who meets:

(1)  the basic income and resources requirements established by the [Department of State Health Services (the "Department")] . . . ; or

(2)  a less restrictive income and resources standard adopted by the . . . hospital district serving the area in which the person resides.

*Id.* § 61.052(a); *see id.* § 61.002(7), (11) (defining the terms "hospital district" and "service area"). In general, a hospital district must provide to an "eligible resident" basic health care services, including primary and preventive services such as immunizations and annual examinations; laboratory and X-ray services; and payment for not more than three prescription drugs a month. *See id.* §§ 61.028(a), .055(a) (Vernon 2001); *see also id.* § 61.0285(a) (Vernon Supp. 2004) (listing optional health care services). The term "'[e]ligible resident' means a person who meets the income and resources requirements established by . . . chapter [61] or by the . . . hospital district in whose jurisdiction the person resides." *Id.* § 61.002(3) (Vernon 2001). An applicant's residence is determined on the basis of the location of the applicant's home. *See id.* §§ 61.003-.004.

An applicant's financial eligibility is determined in accordance with Department rules adopted under sections 61.006 and 61.008, or under a district's less restrictive rules. *See id.* §§ 61.006(a) (Vernon Supp. 2004), .008, .052 (Vernon 2001). The hospital district must adopt an "application procedure" and establish a procedure for reviewing an application within fourteen days of the date the district receives it. *See id.* § 61.053(a), (f), (g), (h). Although a hospital district may specify different documentation required to support an application, *see id.* § 61.053(b), Department rules require an applicant to provide information relating to "the existence of insurance coverage." *Id.* § 61.007(5); *see* 25 TEX. ADMIN. CODE § 14.101(3)(E) (2004). A hospital district also "may adopt reasonable procedures" for minimizing, preventing, and detecting fraud. *See* TEX. HEALTH & SAFETY CODE ANN. § 61.066(a) (Vernon Supp. 2004).

Finally, a hospital district may arrange to provide the required indigent health care services through a contract with a private provider. *See id.* § 61.056(a) (Vernon 2001). The hospital district remains liable for the health care services, however. *See id.* § 61.060(a); *see also id.* § 61.064(a) (stating that a governmental entity that closes, sells, or leases its public hospital is obligated to provide basic health care services to indigents).

You indicate that the District sold its hospital, Northwest Texas Hospital, to Universal Health Systems of Amarillo, Inc. ("UHS") in 1996. *See* Request Letter, *supra* note 1, at 1. *See generally*

Tex. Att'y Gen. Op. No. JM-864 (1988) (discussing the District's authority to sell Northwest Texas Hospital). Under the Indigent Care Agreement (the "Agreement") between the District and UHS, UHS generally agrees to provide indigent health care "at no charge to" the indigents. Indigent Care Agreement art. 2(a), at 4 (May 7, 1996); *see* Request Letter, *supra* note 1, at 1-2. UHS determines whether an individual is indigent and eligible to receive health care services, *see* Indigent Care Agreement art. 2(a), at 4 (May 7, 1996), although the District has the right to review UHS' decision, and an individual whose application is rejected has a right to appeal UHS' decision. *See id.* art. 6(b), (c), at 11. Under the Agreement, an individual who is not a city or a county jail inmate is indigent if, at the time he or she receives health care services, the individual

(1) resides in the District;

(2) "is not a beneficiary of, or has used all funds then available to him under, the Medicare, Medicaid and/or other government health programs . . . and is not eligible to receive payments from other health benefit plans, including health insurance";

(3) "is a member of a family whose family income . . . is equal to or less than 150% of the Department of Health and Human Services Poverty Guidelines"; and

(4) "has resources available to the household of equity value . . . less than $5,000."

*Id.* art. 1(b), at 2 (defining the term "indigent"). You state that, in accordance with the Agreement, the District currently pays UHS "approximately $6.7 million per year to care for the needy and indigent," although UHS avers that "the actual cost of providing indigent health care in the [D]istrict far exceeds the amount" the District pays. Request Letter, *supra* note 1, at 2. To recoup some of its costs, UHS proposes to amend the Agreement to require applicants to obtain insurance through their employers:

It appears that some patients are knowingly refusing to accept health insurance available through their employer, to satisfy the [contractual requirement that the applicant have no third party payor], and receive public assistance. The result is to deprive UHS of insurance reimbursement for costs of treating the person that would otherwise be available, but for the patient's manipulation. Consequently, UHS proposes to amend the Agreement to provide that patients who have commercial insurance available through their employer would be required to provide insurance for themselves and their dependents as their primary payor. If the patient obtains services at a UHS facility, UHS will absorb the patient's insurance deductible or coinsurance through the indigent program as secondary payor. Persons who can provide evidence that employer-imposed premiums exceed 17% of the person's net income will be covered by the Indigent program and not required to accept their employer's insurance plan.

*Id.* In addition, if the applicant cannot change the election to forego the employer's health insurance until the next plan year, health insurance would be considered inaccessible and the applicant would

be eligible for indigent care. *See id.* at 3.[2] You ask about the legality of the proposed amendment to the Agreement. *See id.* at 1.

The issue you raise is analogous to the issue addressed in Attorney General Opinion JM-1094, a 1989 opinion considering whether a county may seek reimbursement under the Act from an individual who subsequently receives a settlement or judgment that would cover medical expenses. *See* Tex. Att'y Gen. Op. No. JM-1094 (1989) at 1. Nothing in the Act at that time purported to place a lien on a "potential right of recovery in a personal injury action." *Id.* at 1. (In 1993, the legislature adopted section 61.044, which stipulates that an applicant for health care services from a county assigns any right of recovery for personal injury. *See* TEX. HEALTH & SAFETY CODE ANN. § 61.044(a) (Vernon 2001); Act of May 27, 1993, 73d Leg., R.S., ch. 880, § 1, sec. 61.044(a), 1993 Tex. Gen. Laws 3502, 3502-03.) Rather, the opinion stated, the Act applied "to sources of payment that 'exist' or 'are available' or for which a third party is 'legally liable.'" Tex. Att'y Gen. Op. No. JM-1094 (1989) at 3.

In this case, the Act does not contemplate that a health care provider may require an applicant for indigent health care to obtain insurance through the applicant's employer in certain circumstances. Section 61.007(5) of the Health and Safety Code, requiring an applicant to provide information regarding the "existence of insurance coverage," is phrased in the present tense. TEX. HEALTH & SAFETY CODE ANN. § 61.007(5) (Vernon 2001). It is concerned with an applicant's coverage at the time of the application, not the availability of coverage or the potential for coverage in the future. The Department's rule requiring an applicant to list information about any medical insurance household members "receive," *see* 25 TEX. ADMIN. CODE § 14.101(a)(3)(E) (2004), similarly focuses on whether the applicant is insured at the time he or she applies for indigent health care. No other provision in chapter 61 of the Health and Safety Code or in the Department's rules expressly or implicitly authorizes a hospital district to require an applicant to purchase health insurance as a prerequisite to receiving indigent health care.[3]

Moreover, absent a provision in the special law creating it, a hospital district has no authority to require an applicant to obtain insurance before the applicant is eligible for indigent health care. "A hospital district has only such authority as is expressly conferred on it by statute or necessarily implied from the authority expressly conferred to effectuate the express powers." Tex. Att'y Gen. Op. No. JC-0068 (1999) at 1. Without express authority, a hospital district may not adopt a standard for determining an applicant's income and resources that is stricter than the Department's standard.

---

[2]*See also* Letter from Sonja Bennett, M.S.N., R.N., Administrative Director, Community Health Services, Northwest Texas Healthcare System, to Nancy S. Fuller, Chair, Opinion Committee, Office of Attorney General, at 2 (Jan. 22, 2004) (on file with Opinion Committee).

[3]You suggest that the refusal to purchase insurance through an employer may be a type of fraud. *See* Request Letter, *supra* note 1, at 2. Section 61.066, an antifraud provision, authorizes a hospital district to adopt "reasonable procedures for minimizing the opportunity for fraud, for establishing and maintaining methods for detecting and identifying situations in which a question of fraud may exist." TEX. HEALTH & SAFETY CODE ANN. § 61.066(a) (Vernon Supp. 2004). A requirement that an applicant purchase insurance through his or her employer is not a procedural requirement; thus, section 61.066's plain language cannot be extended to permit a hospital district to require an applicant to purchase insurance as a means of minimizing fraud. *See* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998) (stating that statutory words and phrases must be construed in accordance with common usage).

*See* TEX. HEALTH & SAFETY CODE ANN. § 61.052(a)(2) (Vernon 2001); *see also id.* § 61.052(e) (stating that, if the Department changes its income and resources requirements so that the hospital district's standards become stricter than the Department's, the hospital district must change its standard to at least comply with the Department's requirements). Because neither the statute nor the Department's rules permit a requirement that an applicant purchase insurance, any such hospital district requirement would be more restrictive than the state requirements and, absent express authority, would be impermissible under the statute.

We therefore conclude that a hospital district or the private entity that provides indigent care on the district's behalf may not require an uninsured applicant for indigent health care, as a prerequisite to receiving the care, to obtain health insurance through the applicant's employer.

## SUMMARY

A hospital district or the private entity that provides indigent care on the district's behalf may not require an uninsured applicant for indigent health care, as a prerequisite to receiving the care, to obtain health insurance through the applicant's employer.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee